UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/18/09
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
EM LTD.,                                  :
                                          :     03 Civ. 2507 (TPG)
                     Plaintiff,           :
                                          :
        – against –                       :        **OPINION**
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                     Defendant.           :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
NML CAPITAL, LTD.,                        :
                                          :
                                          :     03 Civ. 8845 (TPG)
                     Plaintiff,           :     05 Civ. 2434 (TPG)
                                          :     06 Civ. 6466 (TPG)
        – against –                       :     07 Civ. 1910 (TPG)
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                     Defendant.           :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Plaintiffs in these actions own defaulted bonds issued by

defendant, the Republic of Argentina. Plaintiffs move to confirm certain

orders issued by the court on May 22, 2007 restraining and attaching

certain assets of the Republic in a trust administered by the U.S. Bank

Trust National Association. Banco de la Nación Argentina ("BNA"), as

trustee of those assets, opposes the motion and moves to vacate the

orders. Plaintiffs' motion to confirm is granted, and BNA's motion to

vacate is denied.

## Background

### Procedural History

On May 22, 2007, on plaintiffs' ex parte motion, the court issued three orders authorizing plaintiffs' attorneys to levy upon certain assets said to belong to the Republic. The orders all directed plaintiffs to "refrain from taking [the assets] into actual custody pending further order of this Court." As described below, the form of the orders differed slightly based on the posture of the cases to which they related. However, all of the orders affected two groups of assets:  any beneficial interest of the Republic in the "BH Options Trust" (the "BH Trust"), and assets held by the BH Trust. The orders specifically referred to interests held by the trust in BNA's name, which was done because of BNA's function as trustee of the Fondo Fiduciario Federal de Infraestructura Regional ("Infrastructure Fund" or "FIR Fund") and the Fideicomiso de Asistencia al Fondo Fiduciario Federal de Infraestructura Regional ("Assistance Fund"). As disclosed in a Garnishee Statement filed in response to the orders, these assets are held by the U.S. Bank Trust National Association.

At the time of the orders, EM Ltd., the plaintiff in case 03 Civ. 2507, and NML Capital, Ltd., the plaintiff in case 03 Civ. 8845, had already obtained judgments against the Republic. Therefore, the court issued Restraining Orders in those cases. In cases 05 Civ. 2434, 06 Civ. 6466, and 07 Civ. 1910, however, plaintiff NML had not yet obtained

- 2 -

judgments. In those cases, the court therefore issued an Order of
Attachment and Temporary Restraining Order. NML subsequently
received judgments in cases 05 Civ. 2434 and 06 Civ. 6466 on May 28,
2009; those judgments were amended on June 12, 2009.

Plaintiffs moved to confirm the orders. The Republic did not
submit any argument with respect to these orders. However, since BNA
is the trustee of the Infrastructure Fund and Assistance Fund, and
therefore the garnishee under the attachment and restraining orders, it
opposed plaintiffs' motion and cross-moved to vacate the orders. BNA is
a non-party, and there is no dispute for the purposes of this motion that
it is an independent entity and that it is not directly liable for the
Republic's default.

Plaintiffs and BNA have both submitted several declarations
setting forth facts relevant to this dispute. Although they dispute the
nature of the Republic's interest in these assets, they generally agree
about many of the basic facts, including facts about the provenance of
the assets. Therefore, except where otherwise indicated, the facts set
forth below are undisputed.

## The BH Trust

The BH Trust was established in 1999 as part of a transaction to
sell securities in Banco Hipotecario Nacional, which, at the time, was an
Argentine state-owned bank. The privatization of Banco Hipotecario
involved offerings of shares, American Depository Shares ("ADSs"), and

- 3 -

options to buy shares or ADSs in the bank. The shares offered to the general public were called "Class D" shares.

In support of the privatization effort, the BH Trust held ADSs that corresponded to the Class D shares. These ADSs were to be used to satisfy redemptions of options held by investors in the bank. After those options expired on February 2, 2004, the trust continued to hold 9,090,500 ADSs that corresponded to unexercised options. These securities are now the principal asset of the BH Trust.

The BH Trust is governed by a trust agreement, which provides that, upon order of the trustee, the trust's proceeds are distributed to the Assistance Fund. Any residual funds left over after such distributions are given to the Infrastructure Fund. BNA is designated as the trustee of the BH Trust, and therefore has the exclusive power to order these distributions to occur. Because the Banco Hipotecario options corresponding to the ADSs have expired, there are no entities other than the Assistance Fund, Infrastructure Fund and, according to plaintiffs, the Republic, that are beneficiaries of the BH Trust.

The Infrastructure and Assistance Funds

The Infrastructure and Assistance Funds were also set up in connection with the privatization of Banco Hipotecario. Both are referred to as "fiduciary funds" or "public trusts."

The Infrastructure Fund was established by Law No. 24,855. That law created the fund to finance "economic and social infrastructure

- 4 -

projects" of Argentina's national and provincial governments. The law
specified that the fund would "operate within the environment of the
Chief of Cabinet Ministers" and would be administered by a board of
seven individuals appointed by the federal Executive Branch. The law
also requires BNA to serve as the trustee of the fund and administer it
"in accordance with instructions received from the administrative board."
Subsequently, presidential decree No. 924/97, which implements this
law, specified that a private association, the Argentine Construction
Chamber, would be asked to nominate individuals to serve on the board.
In decree No. 924/97, the national and provincial governments are
described as the beneficiaries of the trust, with the national government
also described as the residual beneficiary.

The Assistance Fund was established by presidential decree No.
924/97. The "sole purpose" of the Assistance Fund is "to proceed with
capitalizing the [Infrastructure Fund] through the contribution of the net
proceeds from the sale of the shares of" Banco Hipotecario. The
Assistance Fund is required to "act according to the instructions" of its
Executive Committee, the members of which are appointed by officials of
the federal government. BNA is appointed as the "Fiduciary Agent" of the
Assistance Fund. The Assistance Fund principally owns "Class A" shares
in Banco Hipotecario, which, by law, can only be owned by the Republic
itself.

- 5 -

Thus, in short, proceeds from the Banco Hipotecario sale—which include the ADSs now being held in the BH Trust—accrue to the Assistance Fund, which then funds the Infrastructure Fund, which then makes loans to the federal and provincial governments to support infrastructure development.

### The CPLR and the Republic's Interest in the Attached Property

Under the Federal Rules of Civil Procedure, a federal court employs the attachment and execution procedures provided by the law of the state in which the court sits. See Fed. R. Civ. P. 64 (referring to state law for pre-judgment attachment procedures); Fed. R. Civ. P. 69 (referring to state law for post-judgment execution procedures). The New York Civil Practice Law and Rules ("CPLR") therefore govern the attachment and restraint of assets under these orders.

The CPLR impose similar requirements for both pre-judgment attachments and post-judgment restraints. First, attachments and restraints must be issued against "property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested." CPLR §§ 5201(b); 6202. Second, if the attachment or restraint is served on a person other than the defendant, that person must, at the time of service, owe a debt to the defendant or be "in the possession or custody of property in which such person knows or has reason to believe" that the defendant has an interest. §§ 5222, 6214(b).

- 6 -

For a pre-judgment attachment to be confirmed, a plaintiff must satisfy three additional requirements. First, one of five statutory grounds for attachment must exist. CPLR § 6201. One of these grounds is that the defendant is not a domiciliary of New York, § 6201(1), and another is that "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment," has assigned or concealed property, or removed it from New York, "or is about to do any of these acts." § 6201(3). Second, the plaintiff must establish that it has a cause of action, that it is likely to succeed on the merits, and that the amount demanded from the defendant exceeds the defendant's known counterclaims against the plaintiff. CPLR § 6212. Third, the plaintiff must establish a need for continuing the attachment. CPLR § 6213.

Plaintiffs have indisputably satisfied most of these requirements. First, the Republic is a nondomiciliary residing outside New York. Second, the plaintiffs have a cause of action and are likely to succeed on the merits, given the Republic's undisputed liability in these actions. Third, since the Republic has not asserted counterclaims against the plaintiffs, the amounts sought by plaintiffs exceed the value of the Republic's counterclaims. Fourth, there is a need to continue the attachments, since the funds could be immediately transferred outside the United States if the court's orders were vacated.

The remaining requirements are more complex. Plaintiffs seek to restrain and attach the corpus of the BH Trust, as well as the Republic's

"rights to receive distributions" from the BH Trust "as Certificateholder through the Assistance Fund, and as Residual Beneficiary through the [Infrastructure] Fund." Thus, for the orders to be confirmed, the court must find that (1) the Republic has an interest in the corpus of the BH Trust, as well as a right to distributions from the BH Trust, (2) the Republic's right to distributions gives it an interest in the trust assets, and (3) these interests are "property which could be assigned or transferred."

There is no question that the Assistance Fund has a right to distributions from the BH Trust, and that the Infrastructure Fund has a right to receive any residual distributions upon the termination of the BH Trust. However, the critical question is whether the Republic's rights to the BH Trust assets are equivalent to the Funds' rights. In essence, plaintiffs argue that because the Republic has repeatedly treated the Assistance and Infrastructure Funds as a discretionary source of revenue, it has shown that the Republic has the same rights to distributions as the Assistance and Infrastructure Funds do.

There is an initial question as to plaintiffs' burden of proof on these motions. Plaintiffs argue that they need only make out a prima facie case and that the facts they allege must be assumed to be true. Although this is true when a court is considering whether a plaintiff has shown that it is likely to succeed on the merits of the case, that is not a disputed question on this motion. See, e.g., Bank of Leumi Trust Co. of

N.Y. v. Istim, Inc., 892 F. Supp. 478, 482 (S.D.N.Y. 1995). Plaintiffs have cited no case, and the court has found none, that applies such a liberal standard with respect to the other elements that plaintiffs must satisfy. To the contrary, the Second Circuit has indicated that in determining whether a plaintiff has satisfied the statutory grounds for attachment, it must engage in the "weighing of evidence and also in balancing competing considerations." Capital Ventures Int'l v. Republic of Arg., 443 F.3d 214, 222 (2d Cir. 2006). It is therefore more appropriate to weigh plaintiffs' offer of proof against the contrary evidence offered by BNA, rather than simply assuming that plaintiffs' allegations are true.

Even under that standard, however, the evidence establishes that the Assistance and Infrastructure Funds are part of the Republic. First, plaintiffs have demonstrated that the Republic has treated the assets of the Assistance and Infrastructure Funds as assets of the Republic itself. In 2004, the Republic issued a presidential decree, Decree No. 906/2004, which required the Infrastructure and Assistance Funds (along with several other fiduciary funds) to invest their assets in Argentine treasury bills and in financial instruments issued for the purpose of financing infrastructure projects. The decree referred to these funds as "the national government's trust funds," and characterized the measure as part of a strategy to "reactivate the economy" and satisfy "the public treasury's temporary needs for liquid assets" without resorting to "an increase in public debt." In 2001, Decree No. 957/01 lowered the

salaries of the administrators of fiduciary funds, including the
Infrastructure Fund, and required the savings to be contributed to the
national treasury. In 2002, Law No. 25,565 required fiduciary funds,
including the Infrastructure Fund, to together contribute 200 million
pesos "for the payment of debt." BNA contends that the Infrastructure
Fund was ultimately not required to make the payments to the treasury
that Decree 957/01 and Law 25,565 mandated. Nonetheless, it is still
the case that on at least three occasions, the Argentine government
issued requirements that, in essence, treated the assets of the Assistance
and Infrastructure Funds as assets of the Republic itself.

Second, the principal asset of the Assistance Fund is Class A
shares in Banco Hipotecario. Law No. 24,855, which set up the
Infrastructure Fund and instituted the privatization of Banco
Hipotecario, defined Class A shares as shares "owned by the Federal
Government." Although Class A shares can be sold to private entities,
they are immediately converted to Class C or D shares when that
happens. Moreover, as long as the Class A shares remain the principal
asset of the Assistance Fund, "all the political rights emerging from them
will belong to the State." BNA contends that the Assistance Fund merely
holds the Class A shares as an agent of the Republic. Even assuming
that to be true, however, the Republic is still the owner of the shares,
and therefore of the Assistance Fund's assets.

- 10 -

The Republic's own actions therefore establish that the Assistance and Infrastructure Funds are essentially used as discretionary funds of the Republic, and that the Republic has a right to use the assets of the Funds as it wishes. The Funds are therefore part of the Republic, and, by extension, the Republic has the same legal rights as the Funds themselves. Since it is undisputed that the Assistance and Infrastructure Funds have a right to distributions from the BH Trust, and ultimately to the corpus of the Trust, the Republic has these rights as well. Since the trust agreement explicitly provides for assignments and transfers of the interests of the Funds in the BH Trust, the Funds' interests in the BH Trust constitute "property which could be assigned or transferred," as required by the CPLR.

### Protection Under Trust Law

BNA argues that, under Argentine law, the Assistance and Infrastructure Funds should be viewed as "trusts," and their assets should therefore be considered immune from the Republic's creditors. Plaintiffs contend that Argentine law does not extend such protection to the Assistance and Infrastructure Funds. They further contend that if Argentine law did provide such protections, the court could not enforce that immunity as a matter of New York law.

This dispute presents the preliminary question of whether to look to New York or Argentine law. New York's choice-of-law rules, which govern in this context, require the court to first determine whether there

is an actual conflict between the laws of New York and Argentina.

Karaha Bodas, LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi
Negara, 313 F.3d 70, 85 (2d Cir. 2002).  If a conflict does exist, the law of
the jurisdiction having the greatest interest in the litigation is applied.
Id.  These interests are determined by identifying the purposes of the
conflicting laws and evaluating the facts of the case that relate to those
purposes.  Id. at 87.

In this case, there is no conflict, since neither Argentine nor New
York law would treat the Assistance and Infrastructure Funds as valid
trusts.

Argentine Law

Argentine trust law is set forth primarily in Law No. 24,441.  That
law states that a trust exists when a settlor "transfers fiduciary
ownership of certain assets to another (trustee), who undertakes to
exercise that ownership in benefit of whoever is designated in the trust
agreement (beneficiary)."  The law also provides that the trustee has the
power to "dispose of or encumber the assets in trust when so required by
the purposes of the trust, without the consent of the settlor or the
beneficiary being necessary, unless otherwise agreed."  Furthermore, a
trustee is legally entitled to receive a management fee and to resign.
Assets in trust are considered "separate from the assets of the trustee
and the settlor."  Trust assets are then exempt from legal action by the
creditors of either the trustee or, except in a case of fraud, the settlor.

- 12 -

However, a "beneficiary's creditors may exercise their rights to the fruits of the assets in trust and subrogate the beneficiary's rights."

Law No. 24,855, however, which established the Infrastructure Fund, explicitly preempts Law No. 24,441, to the extent that they conflict. This is consistent with the fact that the fiduciary funds are considered to be distinct from the typical "private" trust envisioned by Law 24,441. The fiduciary funds are all created by legislation with the purpose of using their funds for public purposes, and they do not bear all of the hallmarks of a conventional private trust.

An initial matter of nomenclature must be resolved. If the Funds were considered to be trusts, the Republic would be both their settlor and the beneficiary. The parties appear to agree that the Republic is properly considered the settlor of the Infrastructure Fund, since, by privatizing Banco Hipotecario, it provided the assets to the funds.

The Republic is also the beneficiary of both Funds, despite BNA's argument that the Infrastructure Fund has no beneficiary and that the beneficiary of the Assistance Fund is the Infrastructure Fund. BNA's position is inconsistent with Decree Nos. 924/97 and 228/98, both of which refer to the Republic as a beneficiary of the Infrastructure Fund. Moreover, Law 24,441 defines a beneficiary as the entity for whose benefit a trust is operated, which is clearly the Republic in this case. In addition, if it were true that the Infrastructure Fund has no beneficiary, it could not be considered a trust within the scope of Law 24,441. Since

- 13 -

both Funds operate for the benefit of the Republic—whether as a source
for infrastructure financing or more general financial needs—the
Republic is clearly the beneficiary of the Funds.

For two primary reasons, the Funds do not qualify as "trusts" for
purposes of Law 24,441, and therefore cannot invoke the protections
afforded to trusts by Argentine law.

First, BNA is forbidden from managing the trust assets without the
Republic's consent.  It is, in fact, specifically required to follow the
instructions of officials appointed by the Republic.  Indeed, by BNA's own
account, BNA has little involvement in managing the trust funds, and
instead leaves those responsibilities to the officials appointed by the
government.  This is contrary to the requirement of Law 24,441 that
trustees have the power to manage assets "without the consent of the
settler or the beneficiary."  Similarly, the prohibition on BNA resigning as
trustee or accepting a management fee is contrary to the typical powers
of a trustee under Law 24,441.

BNA's arguments on this issue are unconvincing.  BNA argues that
Law 24,441 allows trustees' decisions to be subject to the consent of a
settlor or beneficiary, as long as that is set forth in the trust agreement.
However, plaintiffs have offered persuasive evidence from experts in
Argentine law that this provision is typically understood to allow a settlor
to consult with the trustee on the use of trust assets, not to control the

trustee's decisionmaking by requiring the trustee to adhere to
instructions of the settlor's appointees.

Furthermore, as discussed above, the assets of the Assistance and
Infrastructure Funds are not treated as distinct from the assets of the
settlor, the Republic. To the contrary, the Republic has repeatedly
decreed that the assets of the Assistance and Infrastructure Funds are a
legitimate source of funds for the Republic itself. It may be true, as BNA
contends, that the Funds are nominally "extra-budgetary" entities, and
therefore do not receive any appropriations from the national treasury.
Nonetheless, that fact has not prevented the Republic from determining
that it had the power to use the Funds' assets without seeking
permission of the "trustee."

These conclusions are bolstered by an opinion of Argentina's
Attorney General, which determined that because of the "restrictions
posed by" Law 24,855 on BNA, "the term 'trustee' is used [with respect to
the Funds] in the sense of [an] agent." Similar conclusions have been
reached by other Argentine legal experts, including a law professor who
has submitted detailed affidavits on behalf of plaintiffs. These opinions
are well supported by the facts discussed above, and are significantly
more persuasive than the opinions of BNA's experts.

Argentine trust law would therefore not shield the assets of the
Assistance and Infrastructure Funds from the Republic's creditors.

New York Law

Plaintiffs argue that New York trust law would not recognize the Funds as trusts.  BNA does not address this argument, and may therefore be deemed to have conceded it.  Irrespective, plaintiffs are correct on the merits.

CPLR section 5205(c) exempts from attachment and restraint the principal of a trust "created by . . . a person other than the judgment debtor."  However, since the Republic, the judgment debtor, created the Funds, section 5205(c) facially does not apply.

Furthermore, New York trust law provides that a trust "for the use of the creator is void as against the existing or subsequent creditors of the creator."  N.Y. Est. Powers & Trusts Law § 7-3.1(a).  Thus, "when a person creates for his own benefit a discretionary trust, his creditors can reach the maximum amount which the trustee under the terms of the trust <u>could</u> pay to him" because it "is against public policy to permit the settlor-beneficiary to tie up her own property in such a way that she can still enjoy it but can prevent her creditors from reaching it."  <u>Vanderbilt Credit Corp. v. Chase Manhattan Bank, NA</u>, 100 A.D.2d 544, 546 (2d Dep't 1984).  Since, as discussed above, the Republic created the Funds for its own benefit (and has subsequently used the assets of the Funds for its own benefit), New York law does not protect the assets of the Funds from the creditors of the Republic.

Finally, it is commonly accepted that "creditors of a trust
beneficiary . . . can subject the interest of the beneficiary to the
satisfaction of their claims." Restatement (Third) of Trusts § 56; see also
N.Y. Est. Powers & Trusts Law § 7-3.4.

Like Argentine law, New York law would therefore permit the
attachment of these funds.

### The Bancec Presumption and the FSIA

BNA's remaining arguments are unpersuasive.

First, the assets of the Funds are not protected by the doctrine of
First National City Bank v. Banco Para el Comercio Exterior de Cuba
("Bancec"). In Bancec, the Supreme Court held that "a presumption of
independent status" attaches to "instrumentalities established as
juridical entities distinct and independent from their sovereign." 462
U.S. 611, 626-27 (1983). However, nothing in the legislation creating the
Assistance and Infrastructure Funds indicates that the Funds were
established as distinct, independent entities. As discussed above, the
conduct of the Republic with respect to the Funds establishes that the
Funds are not viewed by the government as distinct entities.
Furthermore, plaintiffs contend that Argentine law requires that an
entity can only be considered a separate "juridical entity" under
Argentine law if it is explicitly designated one, and BNA has not disputed
this. At most, BNA has offered evidence that the Funds have the power
to contract and engage in litigation, but the Second Circuit has, in a

related context, noted that it would be inappropriate to give dispositive weight to such powers.  Garb v. Republic of Pol., 440 F.3d 579, 595.

Second, the assets of the Funds are not immune from attachment and execution under the Foreign Sovereign Immunities Act ("FSIA").  The FSIA provides exceptions to sovereign immunity when (1) the property is "used for a commercial activity in the United States," (2) the sovereign has waived its immunity from attachment and execution, and, in cases where a judgment has not yet issued, (3) "the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction."  28 U.S.C. § 1610(a), (d).  These requirements are all satisfied here.

The basic inquiry in determining whether an activity is "commercial" is "whether the activity is of the type an individual would customarily carry on for profit."  De Letelier v. Republic of Chile, 748 F.2d 790, 797 (2d Cir. 1984).  The FSIA mandates that "the commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  § 1603(d).  Thus, courts must focus on the "actual," immediate use of funds, rather than on why that use is occurring.  EM Ltd. v. Republic of Arg., 473 F.3d 463, 484-85 (2d Cir. 2007).  Thus, "when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign

- 18 -

sovereign's actions are 'commercial.'" Republic of Arg. v. Weltover, Inc.,
504 U.S. 607, 614 (1992).

By using the Funds' assets to facilitate the sale of securities, the
Republic acted as nothing more than a "private player" in the market,
and therefore used the property for a commercial activity in the United
States. Although BNA contends that the court should consider the
ultimate use of the Republic's profits to fund infrastructure projects, the
court is not permitted to consider the "purpose" of the Republic's activity
in determining whether it was commercial in nature.

With respect to waiver, the second element of the exception to
immunity, it has been repeatedly recognized that when the Republic
issued the defaulted bonds at issue here, it explicitly waived its sovereign
immunity from suits based on the bonds. See EM, 473 F.3d at 468, 480
n.18. Since, as discussed above, the Funds are part of the Republic and
are not distinct entities, that waiver extends to the Funds' assets as well.
Finally, there is no dispute that the purpose of the attachment in the
pre-judgment cases here was to secure satisfaction of the judgment, and
not to obtain jurisdiction.

Third, the frozen property is located in New York, and is therefore
subject to attachment by the court. BNA contends that the Republic's
beneficial interests in the Fund assets can only be located in Argentina.
Under New York law, however, the situs of intangible property, such as
beneficial interests, is "the location of the party of whom performance is

- 19 -

required by the terms of the contract." <u>ABKCO Indus., Inc. v. Apple</u>
<u>Films, Inc.</u>, 39 N.Y.2d 670, 675 (1976).  Here, for the Republic's interests
in the Fund assets to be satisfied, action must be taken by U.S. Bank,
where the BH Trust is located.  The situs of those interests is, therefore,
New York, and is within the court's jurisdiction.

Conclusion

For the reasons stated above, plaintiffs' motion to confirm the
May 22, 2007 orders is granted, and BNA's motion to vacate the orders is
denied.

SO ORDERED.

Dated: New York, New York
       August 1₹, 2009

Thomas P. Griesa
U.S.D.J.